FILED
NOV - 6 2025
9:45am
LESLIE MASON
CIRCUIT CLERK

**IN THE CIRCUIT COURT OF MISSISSIPPI COUNTY, ARKANSAS**
**CHICKASAWBA DISTRICT**
**CIVIL DIVISION**

**DR. EGBERT REBEIRO, M.D.** **PLAINTIFF**

**v. CASE NO.** 47BCV-25-537

**GREAT RIVER MEDICAL CENTER (A PUBLIC HOSPITAL), ABDULLAH ARSHAD, FELICIA PIERCE, JOHN DOES 1–10 (Ad Hoc Committee Members), and JANE DOES 1–10** **DEFENDANTS**

**COMPLAINT**

**COMES NOW**, the Plaintiff, **DR. EGBERT REBERIO, M.D.**, ("Plaintiff" or "Dr. Reberio) by and through counsel, **SUTTER & GILLLHAM, P.L.L.C.**, for his Complaint against the above-named Defendants he states as follows:

1. Plaintiff is a physician and surgeon who has taught at multiple medical schools, including Vanderbilt University School of Medicine, Meharry Medical School, as the Chairman of the Tumor Board, Also in 2004 at the Dekalb Medical center-A part of the Weil Cornell University, as an extra- faculty instructor, for a period of about four months, preparing students for their Board exams.

2. Plaintiff has practiced for decades with significant experience in oncology and general surgery.

3. Plaintiff was a member of the Vanderbilt Tumor Board from years 1994 through 1999.

4. Plaintiff has maintained clinical privileges at **GREAT RIVER MEDICAL CENTER** since approximately 2011 and currently serves as a contract physician in the Hospital's emergency department.

EXHIBIT
tabbies
1

5. Defendant **GREAT RIVER MEDICAL CENTER** (the "Hospital") is a public hospital operating in Mississippi County, Arkansas, and at all times acted under color of state law.

6. Defendant, **ABDULLAH ARSHAD** ("Arshad") is, upon information and belief, the Hospital's Chief of Staff and/or Chief Medical Officer who, at all relevant times, exercised authority over medical staff peer review and personnel matters and acted under color of state law.

7. Defendant, **FELICIA PIERCE** ("Felicia") is, upon information and belief, the Hospital's acting administrator and former Chief Nursing Officer who, at all relevant times, acted under color of state law.

8. Defendants John Does 1–10 are individuals who participated as members of an ad hoc committee convened by Arshad purportedly to conduct peer review of Plaintiff; their identities are presently unknown.

9. Jurisdiction and venue are proper in this Court because the acts complained of occurred in Mississippi County, Arkansas, and Defendants reside or transact business here.

## Factual Background

10. The plaintiff was aware that Great River Medical Center had a cancer treatment center on campus operated by Baptist.

11. The Hospital recruited Plaintiff in or around 2011 with discussions about joining the cancer treatment center. Plaintiff earned and maintained medical staff

privileges and has continued to serve the Hospital's patients, including through call coverage for surgery at Blytheville hospital.

12. The Hospital's operations have degraded in recent years following the departure of respected administrator Ralph Beatty approximately four to five years ago, including the loss of an ICU and elimination of major surgeries at the Hospital.

13. Around early 2024, Arshad assumed the role of Chief of Staff/Chief Medical Officer. Plaintiff has received virtually no referrals from Arshad (fewer than five consults in approximately five years), and Arshad harbors animus toward Plaintiff and has threatened to destroy the Plaintiff through business dealings.

14. In or about late August or early September 2025, an incident occurred during a colonoscopy in which a nurse behaved disruptively and attempted to rouse the sedated patient by pushing on the patient's abdomen, creating a risk of perforation. Plaintiff ordered an immediate x-ray to ensure patient safety, counseled the nurse to step away from the patient, and reported the incident to the Hospital's Quality Nurse believed to be Lisa Smith. Plaintiff documented and retained recordings related to this event.

15. Approximately two weeks later, Plaintiff was told by Kleesha Windle, the medical staff secretary, that Plaintiff would be summoned before a medical executive body concerning two issues: (a) a case in which Plaintiff prudently aborted a Nexplanon removal to pursue an alternative method without any adverse outcome; and (b) the above incident with the disruptive nurse.

16. Rather than convening the Hospital's duly constituted Medical Executive Committee in accordance with applicable bylaws and the Arkansas Peer Review Act, Arshad convened an undisclosed, ad hoc committee appoint whose members remain unknown to Plaintiff. Arshad confirmed the existence of this ad hoc committee by email.

17. Matt Jones, member of the Blytheville Hospital board confirms the committee was not designated by the board.

18. On or about September 17–19, 2025, Plaintiff appeared for a meeting with the actual medical executive committee and no decision was issued.

19. On or about September 18, 2025, Plaintiff performed a laparoscopic cholecystectomy that required conversion to open procedure due to an abnormal vessel with intraoperative blood loss. Plaintiff transfused two units of packed red blood cells, monitored post-operative status, and documented a hemoglobin increase from 12 g/dL pre-op baseline to 13 g/dL post-transfusion—evidence of adequate resuscitation.

20. That evening, Plaintiff evaluated the patient post-operatively, instructed incentive spirometry (with observed 1500 cc effort), and communicated with nursing staff. Plaintiff made a lighthearted remark, which was immediately self-corrected, that he "could kiss" the patient given her progress, followed by "but I cannot do that," and proceeded with standard care measures.

21. Later that night, Plaintiff was informed that the patient and her boyfriend had filed a complaint with police. The boyfriend had not been present during the earlier

evaluation. No patient harm occurred, and the patient's clinical course was stable at that time.

22. The following day, Plaintiff learned his clinical privileges were summarily suspended while he was paradoxically permitted to continue to be on call for the ER and other patient care areas of the Hospital—an internally inconsistent outcome if patient safety had truly been implicated.

23. Plaintiff received no written charges, no notice of specific allegations, no disclosure of the decision-makers, no opportunity to present evidence or call witnesses, and no impartial hearing before a duly authorized committee or the governing board.

24. A month elapsed between this "meeting" and in October Plaintiff formally submitted a letter requesting the immediate lifting of the suspension.

25. Instead, Arshard informed Plaintiff the suspension had been extended for another six-months.

26. Arshard cites an incident on the surgical floor as the reason for the extension.

27. Despite Arshard's allegation, nurses at Blytheville hospital confirm no ill practice was committed by Plaintiff during the past month.

28. Upon information and belief, the Hospital's governing board did not authorize the ad hoc proceedings described by Arshad. A Hospital board member with knowledge (an ophthalmologist) later stated he had never heard of such directives.

29. Arshad subsequently transmitted or caused to be distributed a monitoring "algorithm" specifically targeting Plaintiff that deviated from Hospital policy and medical staff bylaws, further evidencing bias and pretext.

30. On information and belief, Defendants made and published false statements of fact about Plaintiff's conduct and competence to law enforcement, staff, patients, and third parties, harming Plaintiff's reputation and professional standing.

31. Nexplanon removal: Plaintiff exercised sound medical judgment to defer endoscopic removal in favor of a safer alternative technique. There was no adverse outcome and his actions aligned with the appropriate standard of care.

32. Plaintiff intervened to prevent unsafe abdominal pressure on a sedated patient, ordered appropriate imaging that confirmed patient stability, and reported the incident to quality management.

33. Plaintiff's conversion from laparoscopic to open cholecystectomy was medically indicated due to an abnormal cystic artery, the transfusion was appropriate, and the measured hemoglobin increase corroborates adequate intraoperative management.

## CAUSES OF ACTION

### Count I
### Violation of the Arkansas Peer Review Act

34. Plaintiff realleges the foregoing.

35. The Hospital and its agents failed to conduct peer review through the duly constituted medical staff structures, failed to provide required notice and an

opportunity to be heard, used an undisclosed ad hoc committee contrary to bylaws, and misused peer review for discriminatory and pretextual purposes.

36. Defendants violated Arkansas's peer-review laws by orchestrating a sham process that bypassed the Hospital's duly constituted medical-staff bodies and the Act's fairness requirements. Plaintiff pleads that Defendants' actions violated specific provisions of the Medical Staff Bylaws governing peer review. First, the Bylaws define and limit peer-review bodies to duly constituted Medical Center/Medical Staff committees "formed to evaluate and improve the quality of health care," which may only be chaired and served by physicians (MD/DO) (Art. XIV, §14.1).

37. Second, when corrective action is sought, the Bylaws require that the request be made in writing to the Medical Executive Committee (MEC), and that any investigation be conducted by an ad hoc committee appointed by the Chief of Staff; that committee must interview the practitioner and submit a written report to the MEC within fourteen (14) days (Art. VII, §7.1.4). Any MEC recommendation to reduce, suspend, or otherwise limit clinical privileges constitutes an "Adverse Action" that triggers formal hearing rights (Art. VII, §7.1.5; Art. VIII, §8.1). Upon an Adverse Action (or proposal thereof), the CEO must provide certified-mail notice stating the grounds and the practitioner has thirty (30) days to request a hearing (Art. VIII, §§8.2.1–8.2.3). Summary suspension is permitted only as an interim, precautionary step where immediate action is necessary to protect patients or avoid serious operational disruption; it must be promptly noticed under §8.2 and reviewed by the MEC within fourteen (14) days (Art. VII, §§7.2.1–7.2.4).

38. Additionally, the Bylaws provide that special committees exist only if created by, reporting to, and with authority expressly granted by the MEC, and otherwise have no power of action (Art. XI, §11.2). Here, Defendants bypassed these provisions by convening a non-MEC-authorized "ad hoc" group, withholding the required certified notice and Article VIII procedures, and imposing/continuing suspension outside the limited conditions of §7.2—rendering the purported peer review ultra vires and void under the Bylaws.

39. Instead of referring concerns to the Medical Executive Committee under the bylaws, the CMO convened an undisclosed "ad hoc" group whose members, authority, and procedures were never disclosed.

40. Plaintiff was never given timely written notice of specific charges, the adverse information to be considered, or a meaningful opportunity to be heard before an impartial panel with counsel, to present witnesses and documents, or to obtain a reasoned, written decision subject to governing-board review.

41. The resulting six-month "suspension" of his surgical privileges—while simultaneously allowing him to continue ER practice—was arbitrary and retaliatory, accompanied by a bespoke "monitoring algorithm" aimed at him personally, further confirming that peer review was used as a weapon rather than a bona fide quality-assurance process.

42. These departures from the bylaws and from the Act's due-process, anti-retaliation, and committee-authority safeguards constitute a violation of the Arkansas Peer Review Act.

43. Plaintiff seeks injunctive and declaratory relief compelling compliance, expungement of adverse actions, and such other relief as authorized by law.

## Count II

**Procedural Due Process**

44. Plaintiff realleges the foregoing facts.

45. The 14th Amendment forbids the state from depriving any person of life, liberty, or property without due process of law.

46. Plaintiff's medical privilege is a property interest.

47. The Hospital's bylaws and peer-review framework condition adverse action on cause and promise specified procedures

48. As a public hospital, the Hospital and individual Defendants acting under color of state law deprived Plaintiff of protected liberty and property interests in his medical staff privileges and professional reputation without adequate notice, specification of charges, impartial decision-makers, access to evidence, or a meaningful opportunity to be heard.

49. Plaintiff received no written charges, no statement of adverse information, and no opportunity to present evidence or witnesses before the medical executive committee.

## Count III

**Substantive Due Process**

50. Plaintiff realleges the foregoing facts.

51. Acting under color of state law, Defendants intentionally weaponized governmental authority to punish Plaintiff and to damage his reputation by crippling his ability to fully practice at the Hospital.

52. Defendants' conduct was not negligent or merely unfair; it was arbitrary in the constitutional sense and undertaken with animus and retaliatory purpose

53. As a direct and proximate result, Plaintiff suffered loss of surgical privileges, harm to occupational liberty and reputation, lost income and referrals, and other damages.

54. Defendants' actions were arbitrary, capricious, and conscience-shocking, bearing no reasonable relation to patient safety and instead reflecting bias and retaliation.

## Count IV

## Equal Protection

55. Plaintiff realleges the foregoing facts.

56. Defendants intentionally treated Plaintiff differently because of his ethnicity/national origin

57. Defendants selectively enforced peer review and disciplinary processes against Plaintiff based on his ethnicity/national origin without rational basis, while similarly situated physicians were not subjected to comparable treatment.

## Count V

## Arkansas Civil Rights Act

58. Plaintiff realleges the foregoing facts.

59. Defendants, acting under color of state law, violated Plaintiff's rights secured by the Arkansas Constitution, including due process (Art. 2, § 8) and equal protection (Art. 2, § 3).

60. As a direct and proximate result, Plaintiff suffered loss of surgical privileges, reputational and occupational-liberty harms, lost income and referrals, and other damages.

**Count VI**

**Defamation**

61. Plaintiff realleges the foregoing facts.

62. Defendants Arshad, Felicia, and Does published false statements of fact about Plaintiff's competence, conduct, and alleged improprieties to Hospital staff, law enforcement, patients, and third parties. The statements were made negligently or with actual malice, caused reputational harm, and are actionable per se as they impugn Plaintiff's fitness in his profession.

63. These statements are verifiably false, not protected opinion, and concern Plaintiff.

64. As a result, Plaintiff seeks compensatory damages for reputational and economic harm, punitive damages against individual defendants for malicious conduct, and all other appropriate relief.

**Count VII**

**Tortious Interference with Contract and Business Expectancy**

65. Plaintiff realleges the foregoing facts against Arshad and Felicia.

66. Orchestrating and acting behind closed doors, Defendants intentionally interfered with Plaintiff's ER contract, referral relationships, and reasonable expectancies, causing damages.

67. Plaintiff also had ongoing referral relationships and prospective surgical cases with area physicians and patients. Defendants knew of these expectancies and intentionally disrupted them through false statements.

68. Defendants' interference proximately caused lost surgical income, disrupted referrals, reputational harm reducing future cases, and other pecuniary loss.

## DAMAGES

69. As a direct and proximate result of Defendants' unlawful actions alleged above, Plaintiff has suffered and continues to suffer substantial damages, including lost profits and income from suspended surgical work and disrupted referral streams; damage to professional reputation and standing in the medical community; loss of business expectancies and impairment of future earning capacity; emotional distress, humiliation, and mental anguish; and out-of-pocket expenses related to mitigating the harm, securing counsel, and protecting his credentials and privileges. These injuries were the foreseeable consequence of Defendants' conduct, and Plaintiff seeks compensatory damages in an amount to be proven at trial, together with punitive damages where permitted, pre- and post-judgment interest, costs, and reasonable attorneys' fees.

70. Plaintiff further alleges that the individually named Defendants—Abdullah Arshad, Felicia, and John/Jane Does 1–10—acted willfully, wantonly, and with

malice, or with reckless and conscious indifference to Plaintiff's federally and state-protected rights by fabricating and weaponizing an unauthorized "ad hoc" process, suppressing notice and hearing safeguards, disseminating false and stigmatizing statements about Plaintiff's competence and conduct, and orchestrating a pretextual suspension to punish and marginalize him. Their conduct was not a good-faith exercise of peer review but a deliberate, retaliatory campaign undertaken in their individual capacities and outside the bounds of lawful authority. Accordingly, Plaintiff seeks an award of punitive damages against each individual Defendant, in an amount sufficient to punish and deter similar misconduct in the future, to be assessed separately as to each such Defendant based on their respective roles, intent, and degree of culpability.

## JURY DEMAND

71. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award the following relief:

A. Declaratory judgment that Defendants' actions violated the Arkansas Peer Review Act, the U.S. Constitution and 42 U.S.C. § 1983, and the Arkansas Civil Rights Act;

B. Preliminary and permanent injunctions reinstating medical staff privileges, compelling a lawful hearing, and expunging adverse actions and publications;

C. Compensatory damages for lost income, reputational harm, and emotional distress;

D. Punitive damages against the individual Defendants where permitted by law;

E. Attorneys' fees and costs under 42 U.S.C. § 1988 and Ark. Code Ann. § 16-123-105;

F. Pre- and post-judgment interest; and

G. All other just and proper relief.

Respectfully submitted,

Luther Oneal Sutter,
**SUTTER & GILLHAM, P.L.L.C.**
1501 N. Pierce, Ste. 105
Little Rock, AR 72207
Luther.sutterlaw@gmail.com

By: */s/ Luther Oneal Sutter*
Luther Oneal Sutter, ARBN 95031
Luther.sutterlaw@gmail.com